UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OLAMAE HARDY, ADMINISTRATRIX OF
THE ESTATE OF CHAUNCEY D. HARDY

      :      CIVIL ACTION NO.

Plaintiff

VS.                                                              :

IONUT ADRIAN TANASOAIA
AS BASCHET GIURGIU a/k/a
CSS BASCHET GIURGIU,
FEDERATIA ROMANA DE BASCHET a/k/a
ROMANIAN BASKETBALL FEDERATION,
THEO MATTHEW EVANS,
SPITALUL JEDETEAN GIURGIU a/k/a
GIURGIU HOSPITAL
DOCTOR JOHN DOE (I)
DOCTOR JOHN DOE (II)

Defendants                                  :      OCTOBER 3, 2012

**COMPLAINT**

The Plaintiff by its attorney Law Office of Altschuler & Altschuler respectfully allege against the above named defendants as follows:

**JURISDICTION AND PARTIES**

Jurisdiction is based inter alia 28 U.S.C. § 1332 Diversity of Citizenship in that the plaintiff is Olamae Hardy, administratrix, duly appointed by the Middletown Probate Court, Middletown, Connecticut, U.S.A. on August 23, 2012, as administratrix of the Estate of the decedent Chauncey Hardy who at the time of his wrongful death was an American citizen and permanent resident of and domicile of the City of Middletown, State of Connecticut, U.S.A. The Estate of Chauncey D. Hardy's locus is in the City of Middletown, State of Connecticut, U.S.A. The Defendants are neither residents nor

1

domiciles of the State of Connecticut, and they are either domiciles or entities in another state of the United States, or another county. The Defendant, Theo Matthew Evans is a resident and domicile of the City of Portland and State of Oregon, U.S.A. and the other entities and individuals are residents and domiciles of the foreign county, Romania. The amount in controversy exceeds the sum, <u>with regard to the plaintiff against each of the Defendants</u> of over $75,000.00 dollars exclusive of interest and costs as more fully recited in the paragraphs below within this complaint.

### THE PARTIES & SUBJECT MATER JURISDICTION

1. The Plaintiff is the Estate of Chauncey D. Hardy bringing this claim pursuant to diversity of citizenship, Connecticut General Statute §52-555a, the wrongful death statute §42-110 et seq, Connecticut Unfair Trade Practices Act, various Connecticut and U.S.A. tort and contractual theories and pursuant to Connecticut General Statutes §52-59b(a)(1), §52-59b(a)(2), and §52-59b(a)(3) by his surviving heir, representative, agent and administratrix of his Estate, his mother, Olamae Hardy duly appointed by the Middletown Probate Court, Middletown, Connecticut, U.S.A. on or about August 23, 2012.

2. The Defendant Theo Matthew Evans is a permanent resident and domiciliary of the City of Portland, State of Oregon, U.S.A. and at all times mentioned within this complaint, was acting as either an individual, and/or agent representative, employee, coach, recruiter and/or independent contractor relating to and/or for the Romanian Basketball Team, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu that the decedent Chauncey Hardy played for as a member of that team, through that team and through the Romanian Basketball Federation a/k/a Federatia Romana De Baschet, referred to

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

within this complaint and for which all were doing business in Connecticut by virtue of Connecticut General Statutes, §52-59b(a)(1), §52-59b(a)(2), and §52-59b(a)(3).

3. The decedent, Chauncey D. Hardy (hereinafter referred to as Chauncey Hardy) was a high school star basketball player at Xavier High School, Middletown, Connecticut and a former college basketball player at Sacred Heart University basketball team in Bridgeport, Connecticut and was eventually Captain of the Romanian Basketball Team referenced above in paragraph two at the time of his death.

4. The Defendant, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu and its President, Ms. Smaranda Iliescu both being residents and/or domiciliary and/or entities in the City and/or Town of Giurgiu, Country of Romania, were doing business in Connecticut, pursuant to Connecticut General Statutes §52-59b (a) (1), §52-59b (a) (2), §52-59b (a) (3) with regard to the material allegations referred to within this complaint.

5. The Defendant, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu is a division A Romanian Basketball Team and member of the International Basketball Federation, and Romanian Basketball Federation a/k/a Federatia Romana De Baschet and acted pursuant to and guided by those two organization's rules, regulations and guidelines and to which the decedent, Chauncey Hardy entered into a written contract and/or agreement with the Romanian Basketball team to play basketball with said team, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu. Said contract and/or agreement was executed, negotiated, solicited and recruited and the decedent player was evaluated in Middletown, Connecticut on behalf, for, and with the defendant team, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu and directly and indirectly through the defendant Theo Matthew Evans, acting in his individual capacity and as an agent, representative,

3

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

coach, manager, recruiter for said team, through which the decedent was actively solicited, recruited, negotiated, and evaluated by the team AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, hereinafter sometimes referred to as the team.

6. The Defendant, the Romanian Basketball Federation and a/k/a Federatia Romana de Baschet is an association and/or organization at 16 Vsile Conta Street, Sector 2, 020954 Bucharest, Romania and/or building Basarabia nr. 39, Sector 2, Bucharest, Romania. Said basketball federation is an association which organizes, guides, and regulates Romanian basketball teams, including and such as AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, which acted through its President Carmen Tocala, Fderatia Romana de Baschet or Romanian Basketball Federation, 16 Vsile Conta Street, Sector 2, 020954 Bucharest, Romania and a/k/a Federatia Romana de Baschet and/or building Basarabia nr. 39, Sector 2, Bucharest, Romania, hereinafter sometimes referred to as the federation.

7. The Defendant Hospital, Spitalul Judetean Giurgiu is a medical hospital and/or clinical and healthcare facility in Giurgiu, Romania located at Sos.Bucuresti No. 82, Giurgiu 080193, Romania.

8. The Defendant doctor, John Doe (1) was a physician on call at the Spitalul Judetean Giurgiu Hospital and who was supposed to provide medical, health care, diagnosis, and treatment to, Chauncey Hardy who was brought to the Spitalul Judetean Giurgiu Hospital in Giurgiu Romania. Said doctor on the best information and belief is a citizen and/or domiciliary and/or resident of Giurgiu, Romania and presently whose name is not known, but was one of the two doctors who treated and who had the responsibility of the medical and hospital care of the decedent and who was fined nine

4

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

hundred and sixty dollars each doctor and for which the hospital was fined $11,200 dollars.

9. The Defendant doctor, John Doe (2) was another physician on call at the Spitalul Judetean Giurgiu Hospital and who was supposed to provide medical, health care, diagnosis, and treatment to, Chauncey Hardy who was brought to the Spitalul Judetean Giurgiu Hospital in Giurgiu Romania. Said doctor on the best information and belief is a citizen and/or domiciliary and/or resident of Giurgiu, Romania and presently whose name is not known, but was one of the two doctors who treated and who had the responsibility of the medical and hospital care of the decedent and who was fined nine hundred and sixty dollars each doctor and for which the hospital was fined $11,200 dollars.

10. The Defendant, Ionut Adrian Tanasoaia a/k/a George Ionut Adrian Tanasoaia, who based on the best information and belief, is a citizen and resident and/or domiciliary of Giurgiu, Romania and whose last known address is Giurgiu Penitentiary, Sos Balanoaiei No. 12A, Giurgiu 080770, Romania and who on October 9, 2011 assaulted the decedent, Chauncey Hardy, as more fully described within this complaint.

11. Jurisdiction is based on 28 U.S.C. § 1332 Diversity of Citizenship mentioned above and the Plaintiff is the Estate of Chauncey Hardy through her legal representative and administratrix, Olamae Hardy, acting as legal representative and also duly appointed by the Probate Court of Middletown in the City of Middletown, State of Connecticut, U.S.A on or about August 23, 2010 and in the interest of the estate's locus is in Middletown, Connecticut, U.S.A. The decedent was a full time resident and domicile in City of Middletown in the State of Connecticut at the time of his death and

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

whose Estate has been opened in the State of Connecticut and whose contract of employment was negotiated with the decedent and executed by the decedent with the assistance of Theo Matthew Evans who recruited and solicited Chauncey Hardy in Connecticut and for which said contract was executed in the State of Connecticut by Chauncey Hardy on or about August 27, 2011.

12. Jurisdiction and Venue is further pursuant to Connecticut General Statute §52-59b(a)(1), §52-59b(a)(2) and §52-59b(a)(3)(A)(B) in that the Defendant Theo Matthew Evans, the Defendant AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, and the Defendant Romanian Basketball Federation through their actions transacted business in the State of Connecticut through its dealings, communications, transmissions, texts, emails, etc., with Chauncey Hardy through Theo Matthew Evans and through Theo Matthew Evans on behalf of the team itself in visiting, recruiting, soliciting, evaluating and negotiating a written contract of employment, which was executed between Chauncey Hardy and the basketball team AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu and Ms. Smarandita Iliescu, President of said team and under the auspices, bylaws, regulations of the Romanian Basketball Federation. The Defendants further committed tortious acts within the state of Connecticut in that they through their association, representatives, agents, and through Theo Matthew Evans acting as an agent, servant, employee, coach, or representative of the basketball team and federation and individually as an independent contractor, committed violations of Connecticut Unfair Trade Practices Act, a violation of Written Contract and Breach of Implied Covenant of Good Faith and Fair Dealing of a Written Contract and Misrepresentation, all relating and leading to the eventual wrongful death of Chauncey

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

Hardy, including, but not limited to providing inadequate supervision, safety, health, welfare and education and failure to advise, protect and maintain against the known potential dangers and the anti-American, anti-African American, anti-African American basketball player's sentiment by some Romanian people and various Romanian gangs known as "clans". Said known potential dangers and said failure was by the Defendants, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, Theo Matthew Evans and the Romanian Basketball Federation. The Defendants also failed to address the concerns and problems as required by said contract, explicitly and implicitly. The Defendants misrepresented concerns and problems with the safety, health and welfare of a United States player such as Chauncey Hardy playing in Romania, in the town of Giurgiu, and more particularly an African American. Said Defendants knew or should have known that there would be racial, national origin prejudice to Americans and African Americans, including, but not limited to post game activities and more particularly post game social activities for which the contract explicitly or implicitly required the decedent player to provide his loyalty, at all times, to the club and/or team, best service, and be a representative of the club and/or team to the best of his abilities. Further, monies for Chauncey Hardy's salary was directly wired or to be wired from Romania to a United States bank account, per the contract. Moreover, Chauncey Hardy was promised that he would have full health insurance for his time of employment, although after suffering his injuries from the assault he was originally sent and aided by team members and personnel to a lower level skill hospital/medical facility in Giurgiu as opposed to a higher level skill hospital in Bucharest, Romania where he eventually was belatedly transferred when it was too late to save his life.

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

This was contrary to his guarantee of full health insurance coverage per his contract and he should not have been transported to a hospital of a lower standard of care as more fully described within this complaint. All of these actions not only violated the terms of the contract, but were also Breaches of Implied Covenant of Good Faith and Fair Dealing, Violations of the Connecticut Unfair Trade Practices Act and Misrepresentation and also with consideration that the contract of employment with the basketball team was negotiated and executed in the State of Connecticut, where this Court has jurisdiction additionally under Connecticut General Statute §52-59b(a)(1), §52-59b(a)(2), and §52-59b(a)(3). The Defendants AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, Theo Matthew Evans and the Romanian Basketball Federation contracted business within the State of Connecticut and/or committed tortious acts of Breaches of Implied Covenant of Good Faith and Fair Dealing, Violations of the Connecticut Unfair Trade Practices Act and Misrepresentation in the State of Connecticut and also acting outside the state, but causing injury to the person or property within the state i.e. the Estate of Chauncey Hardy, the decedent and also because said Defendants were regularly soliciting business and/or engaging in conduct deriving substantial revenues from goods and services rendered in the State of Connecticut or should have reasonably expected that there acts of Breaches of Implied Covenant of Good Faith and Fair Dealing, Violations of the Connecticut Unfair Trade Practices Act and Misrepresentation would have consequences in the State of Connecticut to the decedents Estate and that these Defendants derived substantial revenue from interstate and/or international commerce. Pfizer, Inc. v. Rabi Abdullahi, et

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

al (Adamu) Second Circuit Court of Appeals, Docket Nos. 05-4863-cv(L), 05-6768-cv(CON).

13. The actions or non actions of the Defendants directly or indirectly led to the wrongful death of Chauncey Hardy and damages to the decedent through his Estate who is bringing this action also under Connecticut General Statutes §52-555(a), §52-190a, §52-184c and §42-110 et seq., and various tort and contractual causes of action and violations of the protocol of international guidelines for proper minimum health care standards to insure that human beings, such as the decedent, are provided same.

14. The Plaintiff is also bringing this action within the District of Connecticut, the United States District Court based on venue under 28 U.S.C. 1391 as this judicial district in which a substantial part of the events or omissions gave rise to the claim occurred.

15. The U.S. District Court of Connecticut is also the proper venue for this action for several reasons taken singularly or in combination:

   a. The underlying basis in this case was contractual, which led to the wrongful death of Chauncey Hardy in Giurgiu, Romania based on a contractual written contract between the decedent succeeded to by his Estate, which was opened in Middletown, Connecticut, United States, while as the decedent's locus of his estate and the decedent was a resident and domicile of Middletown, Connecticut for his entire life.

   b. There were tortious acts and contractual breaches as stated above and within and the venue is also appropriate under Connecticut General Statute §52-59b stated more fully within this complaint whereas jurisdiction and proper venue

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

under Connecticut General Statute §52-59b(a)(1) as the defendants were transacting business within the state, which gave cause of action and/or Connecticut General Statute §52-59b(a)(2) in that various tortious acts occurred within the state of Connecticut, including Breaches of Implied Covenant of Good Faith and Fair Dealing, Violations of the Connecticut Unfair Trade Practices Act and Misrepresentation.

c. Connecticut General Statute §42-110 et seq. allows for liability and jurisdiction and venue against out of state defendants who communicate and misrepresent by telephone, email, etc. and the misrepresentation were received and acted upon in Connecticut, such as here alleged within this complaint.

d. The Connecticut Unfair Trade Practices Act can also apply to the eventual torts occurring or culminating outside the state of Connecticut although this contract and breaches of same and tortious violations relating to same occurred in part, in Connecticut. Union Royal Chemical Company vs. Drexel Chemical Company 1931 f. Sup. 140, C.G.S §42-100a(4), Patch vs. Stanley Works 448 f. 2nd 483 (Second Circuit 1971)

16. The Federal District Court of Connecticut is a superior venue rather than Romania for several reasons, in addition to those cited above;

a. There is indications in a recent New York Times article that Romania is no longer a country of laws in light of several developments, including the current impeachment attempt of its President and more specifically related to this case, the Romanian court system and related government has already shown apparent prejudice to the decedent and his Estate with regard to his claims or

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

potential claims against Romanian defendants and the lack of justice and failure to property prosecute the criminal defendant in this case who assaulted Chauncey Hardy. Moreover, recently the Romania's health ministry Raed Arafat who investigated the Chauncey Hardy matter and subsequently fined the Giurgiu Hospital $11,200.00 dollars as well as the two doctors John Doe (1) and John Doe (II) $920.00 dollars each as well as one ambulance driver, significant fines and penalties for the improper treatment and violations of standards of care and was later forced to resign because of his criticism of the health care management system in Romania, including his criticism, investigation, and his conclusion of improper medical treatment of Chauncey Hardy by the hospital and healthcare providers in the Romanian system.

b.  The criminal defendant, Ionut Adrian Tanasoaia a/k/a George Ionut Adrian Tanasoaia, was found guilty by a Romanian Judge with regard to the assault and eventual death of Chauncey Hardy, but he was only found guilty, despite overwhelming evidence of assault to commit murder, of the crime of public outrage, which only vindicates the Romanian public rather than bring justice to the decedent who was assaulted and eventually died due to injuries suffered at a Romanian nightclub, including improper medical and hospital care negligence after the attack and described more fully within this complaint. The assaulting defendant in this case was only found guilty of the minor charge of public outrage, which vitiates or ignores or diminishes the fact that it was an attack on a human being, in particular Chauncey Hardy, an African American as opposed to only an outrage to the Romanian people. Yet the Judge did not find the

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

criminal defendant, in spite of overwhelming to be guilty of the more serious crime of assault that leads to murder. Moreover, the Judge only sentenced criminal defendant to five years in jail and there are recent indications that he has already been let out of jail or maybe will be let out of jail soon. There was an appeal of this verdict where the Appellate Court reconsidered the charge and may have changed to the charge to a more serious one, but did not increase the jail penalty of only five years for the defendant who took the life of Chauncey Hardy in an intentional assault.

c. There has been a long history of rivalry gangs, particularly in the town of Giurgiu and that judicial area, which were well known or should have been well known by the Romanian basketball team, its officials, the Romanian basketball federation, its officials, and the Defendant Theo Matthew Evans. These gangs are alleged to have potential connections with the government and/or the court system and that these gangs are anti-American and/or anti-African American. The rivalry between these gangs is also intimately related to the rivalry between the two opposing teams that played on the night that Chauncey Hardy was murdered and for which Chauncey Hardy was a star, captain, and member of one of said teams.

d. The Romanian health ministry official at the time of the incident, Raed Arafat, who investigated the attack on the decedent and his medical health care treatment at the Giurgiu Hospital determined that the local health authorities be fined including two doctors, defendant John Doe (1) and Defendant John Doe (2) and the Defendant Giurgiu hospital itself, as they violated rendered health care,

procedures and let Chauncey Hardy die assuming that he had been in a alcoholic coma, and ignoring the fact that he had suffered severe head trauma, a broken nose, severe contusions over his right eye, a bloody lip, massive hemorrhaging, broken skull, two neck fractures and eventually causing him to become comatose, and thereafter suffer multiple heart attacks and his eventual death. Further, they failed to have him properly transferred to a higher level of care hospital until four and one half hours later and failed to provide him with any reasonable diagnostic tests or did not have the equipment available to perform those necessary tests at this lower level hospital or failed to determine the need for such tests. The health of minister, Raed Arafat was subsequently forced to resign from the government because of his criticisms relating to the health care systems and the emergency care provisions in Romania and in part because of his conclusions in the investigation into the death of Chauncey Hardy. He recommended that the doctors and the hospital in Giurgiu as well as the ambulance drivers and other hospital and healthcare personnel be fined substantial sums of money, investigated and what was described as potential claims of involuntary manslaughter against these facilities and doctors and healthcare providers.

e.  The Federal Bureau of Investigation of the United States was called in on this case and was involved because of the concern that there was anti-American and anti-African American sentiment that had led to this assault and also Chauncey Hardy's lack of proper medical treatment and care after he was assaulted. The FBI conducted an investigation of the Romanian authorities'

13

investigation and to the best information and belief the FBI files related to this matter, is located in the United States and the investigation and personnel who investigated this matter are United States citizens, residing and domiciles in the United States and would be material to the civil prosecution of this case. Upon reasonable information and belief the FBI and preliminary report is approximately fifty-pages and it is unclear whether the investigation is completed, and to date there has been a failure to disclose photos, the autopsy report, medical records, further investigative materials specific to the investigation and circumstances surrounding the assault and eventual death of Chauncey Hardy, which material may well be available in the United States to the Plaintiff upon proper motions filed with the U.S. Federal District Court of Connecticut.

f. The Romanian government and judicial system on its face offered victims of a crime in Romania specific regulations and ability to be involved in the process and seek monetary compensation. However when the decedent's mother attempted to follow this process she was not sufficiently or not allowed to do so on what was described by the court as a technicality. She was neither allowed to properly request or allowed input into the criminal prosecution of the attacker nor allowed to, contrary to Romanian's own purported laws and effectively vitiated the Estate of Chauncey Hardy's right to seek civil compensation as a victim in the Romanian court system.

g. There was a prominent past incident in Romania, which has resulted in continuing discrimination and animus against the United States and United States citizens, in that a U.S. Marine Staff Sergeant who allegedly negligently

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877