with a military motor vehicle, struck and killed a famous Romanian musician. At the time the Marine was driving the vehicle as a security guard at the U.S. Embassy in Bucharest Romania and that incident occurred before Chauncey Hardy's death and has apparently left an indelible anti-American, anti-African American feeling in Romania and according to a prominent Romanian civil attorney.

h.  The decedent himself before his death although he had only been in the country for less than one month, and had been racially profiled on several occasions and treated in derogatory, demeaning, and offensive ways because he was African American.

17. The policies of the forum of the State of Connecticut will best be served in that there will be more certainty, predictability, uniformity and result and basic policies underlying the particular field of law and particularly under Connecticut Unfair Trade Practices Act, Implied Covenant of Good Faith and Fair Dealing, wrongful death statute, medical and healthcare negligence law to allow for sufficient damages and compensation to someone whose death was wrongfully caused to make sure that an American's Estate receives justice in the civil court system. The Defendants AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, Theo Matthew Evans and the Romanian Basketball Federation should have had justified expectations of a United States court involvement because a). The contract was executed, negotiated and the player himself was evaluated and recruited in Connecticut; b). That the basic policies underlying that contract as well justified expectations that the defendants could anticipate that these violations of that contract and the Connecticut Unfair Trade Practices Act would be

15

remedied in Connecticut. c). That these defendants could expect to be exposed to Connecticut law and are not more disadvantaged by litigating this claims in Connecticut, particularly in the light of the history of this particular case to date in the criminal system and the effective vitiating of the Plaintiff's Estate's rights to receive compensation as a victim. <u>Pfizer, Inc. v. Rabi Abdullahi, et al (Adamu)</u> Second Circuit Court of Appeals, Docket Nos. 05-4863-cv(L), 05-6768-cv(CON).

18.. The decedent's mother and family are fearful and have great trepidation with regard to their safety if they were to travel to Romania for any civil proceedings relating to Chauncey Hardy's case. e).  The Romanian court system does not have a trial by jury and also has little experience and has different evaluations for loss of life, which are not reflective or similar to the Connecticut General Statutes including the wrongful death statute which allows for economic and noneconomic damages to the estate. f). Romania is a former communist country and not a fully developed court system with its recent civil code being passed last year 2011. g). The Romanians have negligible population of Africans or African Americans and have shown a history of prejudice towards same. h). The mother of the decedent, on behalf of the estate, tried to seek redress as a victim and also civil compensation, which was allegedly allowed through the court system in Romania, but when she filed the procedures that they requested, her requests were denied based on a "technicality" and upon appeal the technicality was upheld and consequently even in the Romanian system, the victims rights in this case were already vitiated.

## GENERAL ALLEGATIONS

19. The Plaintiff is the Estate of Chauncey D. Hardy brought through his mother, legal heir, representative and Administratrix of his Estate, Ola Mae Hardy, duly appointed by the Middletown Probate Court, Middletown, Connecticut, U.S.A. on or about August 23, 2012.

20. Chauncey Hardy was born on May 15, 1988 and suffered a wrongful death on or about October 9, 2011 in Giurgiu, Romania beginning when he was assaulted at least by the Defendant, Ionut Adrian Tanasoaia a/k/a George Ionut Adrian Tanasoaia who punched Chauncey Hardy in the chin with enough force to knock him to the ground and fall over onto a step and suffered a heavy and noisy collision with the floor, causing a severe head trauma, a broken nose, severe contusions over his right eye, a bloody lip, massive hemorrhaging, broken skull, two neck fractures and eventually causing him to become comatose, and thereafter suffer multiple heart attacks and his eventual death.

21. At the time of his death he was a United States citizen and resident and domicile of Middletown, Connecticut, United States of America.

22. Chauncey Hardy was a professional basketball player playing for AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, a top tier division A Romanian Basketball Team in Romania, which is affiliated, regulated, and subject to the rules, regulations, and bylaws of the Romanian Basketball Federation a/k/a Federatia Romana de Baschet.

23. Chauncey Hardy had a fully signed and executed agreement/contract which was negotiated in Middletown, Connecticut and where he was recruited in person, by emails, phone calls, texts, messaging, etc. primarily in Middletown, Connecticut

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

through Theo Matthew Evans of Portland, Oregon, acting individually and/or an agent, coach, and recruiter for the AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu team and/or acting individually as a sports agent and/or recruiter and/or independent contractor. The contract was signed, dated, executed by Chauncey Hardy on August 27, 2011 in Middletown, Connecticut.

24. The prosecutors office in Giurgiu eventually arrested the defendant Ionut Adrian Tanasoaia and also investigated the medical personnel at Giurgiu Hospital who were supposed to care for Chauncey Hardy and according to the investigation and concerning an accusation that originally involved manslaughter against the medical personnel at that Hospital and based on an initial investigation report made by the local "Sanitary Direction" that the proper protocol of medical service had been deviated from and that there were deficiencies regarding the expeditious transfer of the patient to Bucharest Hospital, which was a superior hospital by way of equipment, training and skill. This investigation was carried on by the then Health Minister of Romania Raed Arafat who has since been forced from office because of his criticism of the Romanian healthcare system and its investigation of the lack of healthcare, proper healthcare and skill related to the treatment and care or lack thereof of Chauncey Hardy and his enforcement and penalty levied against the Giurgiu hospital, Defendants John Doe (1) and John Doe (2), which shows that if the Romanian Government will not tolerate criticism by its own healthcare minister and that the court system will more likely than not will be prejudice against any findings against a Romanian healthcare providers as well. Chauncey Hardy was ignored by doctors at Giurgiu Hospital where he was left for almost five hours

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

before being transported to Bucharest Hospital, which had a higher level of care and skill and training and experience. Whereupon, based on in part, Arafat's investigation, the Hospital, the ambulance service and two of the doctors at the hospital were fined. The Romanian Health Ministry secretary of state Raed Arafat indicated said that Chauncey Hardy should have been transferred to Bucharest immediately instead of the four and one half hours after he arrived in a coma. The doctors in Giurgiu only kept him on non-medical perfusion, assuming that he was in an alcoholic coma, despite the fact that he had suffered from head trauma.

25. Chauncey Hardy had already become Captain of the team and was the highest scorer that night before early morning post game assault at a social event celebrating his team's victory against the rival team Dinamo Bucharest. Chauncey Hardy was dancing with a girl and was then attacked by Ionut Adrian Tanasoaia who hit Chauncey Hardy either repeatedly with his fists or at least one time in his chin, although there are conflicting reports as to whether Chauncey Hardy was then stomped on and repeatedly kicked by other male patrons of the nightclub who may have had gang related affiliations with the original assaulter, the Defendant, Ionut Adrian Tanasoaia.

26. Previous to the incident on several occasions in the relatively short time that Chauncey Hardy was in Romania, he had been approached by various Romanians apparently solely because he was African American and they approached him with racial epithets and/or racial stereo profiling remarks, requests, and treatment as well as using racial epithets, such as "could he provide them with drugs", solely assuming based on his origin that he would be selling drugs.

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

26. Eventually, the criminal court system in Bucharest Romania brought an arrest and prosecuted Ionut Adrian Tanasoaia where he was found guilty to the less serious crime of causing public outrage, rather than crime of assault which leads to a person's death and was sentenced to only five years in prison. The Bucharest Court of Appeals did accept the appeal on a technical issue but did not increase his prison time and left it at five years.

27. The Bucharest Court of Appeals also maintained the original court's decision claiming that Chauncey Hardy's mother who had made a request to be treated as a victim and also for civil compensation which was purportedly a described procedure in the Romanian court system and she was asked to follow through with same and yet the Court and the Appellate Court turned her down on a technicality and therefore vitiated her right to the legitimate civil prosecution of the case in Romania of her son's death, particularly through the purported victim's rights system in Romania for the American's does not appear to truly exist or at least not for African American's and their Estates, such as that of Chauncey Hardy.

28. The proximate cause of Chauncey Hardy's death was the referenced assault, and antecedent's failure to provide adequate security, advice, warning, education and protection, which then led to the further medical and hospital negligence referred to within this complaint, which all led to the eventual wrongful death of Chauncey Hardy on October 9, 2012 at the age of twenty-three years old.

### FIRST CLAIM FOR RELIEF
### ASSAULT AGAINST IONUT ADRIAN TANASOAIA

29. The Plaintiff hereby repeats and realleges each and every allegation set forth in paragraph 1.- 28. as though expressly set forth herein at length.

20

30. At all times mention Ionut Adrian Tanasoaia a/k/a George Tanasoaia assaulted Chauncey Hardy causing him to sustain the following personal injuries set forth below.

31. The assault was willful, wanton, and malicious and as a result of the intentional acts of the Defendant Ionut Adrain Tanasoaia, Chauncey Hardy was forced to suffer:

    a. Pre-death horror;

    b. severe head trauma;

    c. massive head and brain hemorrhaging;

    d. broken skull;

    e. two neck fractures;

    f. bruises;

    g. abrasions to the body

    h. coma;

    i. broken nose;

    j. bloody lip;

    k. significant contusion over right eye

    l. multiple heart attacks;

    m. his eventual death; and

    n. Loss of enjoyment of life

## SECOND CLAIM FOR RELIEF
## NEGLIGENT ASSAULT AGAINST IONUT ADRIAN TANASOAIA

32. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 31 above as though expressly set forth herein;

21

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

33. At all times mention Ionut Adrian Tanasoaia a/k/a George Ionut Adrian Tanasoaia negligently assaulted Chauncey Hardy causing him to sustain the following personal injuries set forth below.

34. As a result of the negligent assault by Ionut Adrian Tanasoaia a/k/a George Ionut Adrian Tanasoaia, Chauncey Hardy was forced to suffer:

   a. Pre-death horror;

   b. severe head trauma;

   c. massive head and brain hemorrhaging;

   d. broken skull;

   e. two neck fractures;

   f. bruises;

   g. abrasions to the body

   h. coma;

   i. broken nose;

   j. bloody lip;

   k. significant contusion over right eye

   l. multiple heart attacks;

   m. his eventual death; and

   n. Loss of enjoyment of life

### THIRD CLAIM FOR RELIEF
### BREACH OF WRITTEN CONTRACT AGAINST AS BASCHET GIURGIU a/k/a CSS BASCHET GIURGIU

35. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 34 above as though expressly set forth herein.

22

36. The Defendant, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu in writing, pursuant to an agreement, executed on August 27, 2011 in Middletown, Connecticut by Chauncey Hardy in writing by the AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu team, represented by Mrs. Smaranda Illiescu, President of the team, said parties agreed to:

a. Follow the regulations of the FIBA to address any concerns or problems by way of direct communication between the club and the player;

b. Agreed to a working contract for the entire 2011-2012 season, for which the decedent would be paid $1,000.00 U.S. dollars, net, per month and that the contract would continue on until May 30, 2012, at the minimum. The agreement contracted that the player was to give its "best service, loyalty to the club as a player and representative of the club". The entire monthly salary would be wired directly to the account of the U.S. player in the United States.

c. The contract provided full health insurance to the player.

d. The decent performed his portion of the contract and said contract was provided for by both sides by good and valuable consideration.

37. The Defendant AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu materially breached its written promise to the decent in any of the following ways, taken singularly or in combination:

a. In that they failed to provide adequate security, protection, advice, warning, and to educate and keep safe from the rivalry between gangs in the town of Giurgiu and the racial prejudice against African American basketball players in the town of Giurgiu;

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

b. In that they failed to address these concerns and problems directly with the player and the club;

c. In that they failed to pay Chauncey Hardy due to his demise, the remainder of the working contract to May 30, 2012;

d. That the player, Chauncey Hardy gave his best service and loyalty to the club, but the club failed to provide the mutual obligations of providing security, protection, advise and safety and when he was acting with his best service and loyalty to the club and represented the club at the restaurant/nightclub and where he was egregiously assaulted;

e. In that they failed to warn Chauncey Hardy of the dangers of the anti-American, and anti-African American prejudices and hatred and profiling in the town of Giurgiu, Romania;

f. In that they failed to provide Chauncey Hardy the full health insurance and to insure that after he was assaulted that he would be sent to a higher level care and professional skill facility hospital, which was in Bucharest Romania less than forty-five miles from the Giurgiu hospital, rather than being taken to a lower level skill hospital/clinic in Giurgiu, after he had been assaulted;

g. In that they failed to teach him basic Romanian language so that he would be able to converse and realize that it would put him was in danger at the time and place of his assault;

h. In that the failed to provide him with a Romanian interpreter when he was acting as a representative of AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu when he was assaulted;

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

    i. They failed to warn about the dangerous conditions and the sensitivities and racial hatred and vicious proclivities of the various gangs, known as clans, one of which the assaulter was apparently a member;

    j. They failed to warn or train or supervise or educate the decedent about said sensitivities referenced above;

    k. They failed to warn or supervise or educate about the potential racial and national origin practices to Americans and African Americans, particularly in post game activities;

    l. They failed to provide bodyguards and intermediaries that could mediate any disputes with the non-players after a game, postgame social event.

38. These breaches caused the Plaintiff to sustain the following damages;

    a. Pre-death horror;

    b. severe head trauma;

    c. massive head and brain hemorrhaging;

    d. broken skull;

    e. two neck fractures;

    f. bruises;

    g. abrasions to the body

    h. coma;

    i. broken nose;

    j. bloody lip;

    k. significant contusion over right eye

    l. multiple heart attacks;

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

m.  his eventual death; and

n.  Loss of enjoyment of life

### FOURTH CLAIM FOR RELIEF
### NEGLIGENCE AGAINST AS BASCHET GIURGIU
### a/k/a CSS BASCHET GIURGIU

39. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 38 above as though expressly set forth herein.

40. The Defendant, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu was negligent in that:

a.  They failed to provide security for their basketball players in post game activities;

b.  They failed to provide an interpreter so that there would not be a communication problem between the American players and the Romanian populous that could lead to assaults, such as the one that occurred to Chauncey Hardy;

c.  They failed to warn about the dangerous conditions and the sensitivities of the various gangs, known as clans;

d.  They failed to warn or train or supervise or educate the decedent about said sensitivities referenced above;

e.  They failed to warn or supervise or educate about the potential racial and national origin practices to Americans and African Americans, particularly in post game activities;

f.  They failed to provide bodyguards and intermediaries that could mediate any disputes with the non-players after a game.

26

41. As a result of the negligence by the Defendant, AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu, Chauncey Hardy was forced to suffer:

   a. Pre-death horror;

   b. severe head trauma;

   c. massive head and brain hemorrhaging;

   d. broken skull;

   e. two neck fractures;

   f. bruises;

   g. abrasions to the body

   h. coma;

   i. broken nose;

   j. bloody lip;

   k. significant contusion over right eye

   l. multiple heart attacks;

   m. his eventual death; and

   n. Loss of enjoyment of life

### FIFTH CLAIM FOR RELIEF
### MISREPRESENTATION AGAINST AS BASCHET GIURGIU
### a/k/a CSS BASCHET GIURGIU

42. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 41 above as though expressly set forth herein;

43. The Defendant AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu represented to the Plaintiff, Chauncey Hardy that;

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877

    a.    Problems would be resolve in direct communication with the player and the club.

    b.    The player use his best service and loyalty to the club and would act as a player and a representative and the club in return would provide adequate security and guidance and education as to the local customs and violent proclivities and anti-American, anti-African American sentiments of the gang/clans of which the assaulter was a member.

    c.    In that they represented to the player that the environment where the Plaintiff, Chauncey Hardy was socializing immediately after games would be safe and he would be free from harm;

44. The representations made by the defendant AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu and/or through its agents and/or employees and/or servants and/or representatives were false, and it knew or should have known them to be false.

45. The defendant AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu and/or AS Baschet Giurgiu a/k/a CSS Baschet Giurgiu through its agents and/or employees and/or servants and/or representatives induced the plaintiff to rely on said representations, and the plaintiff did so rely on such representations to his detriment and loss as stated in paragraph forty-three above.

46. These misrepresentations caused the plaintiff to sustain the following damages

    a. Pre-death horror;

    b. severe head trauma;

    c. massive head and brain hemorrhaging;

    d. broken skull;

LAW OFFICES ALTSCHULER & ALTSCHULER
509 CAMPBELL AVENUE, P.O. BOX 606, WEST HAVEN, CONNECTICUT 06516-0606 • (203) 932-6464, 932-1400 • JURIS NUMBER 100877